UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PAUL SCOTT,                              )
                                         )
            Plaintiff,                   )
                                         )         CIVIL ACTION NO.
VS.                                      )
                                         )         3:20-CV-2380-G
U.S. BANK NATIONAL ASSOCIATION           )
d/b/a U.S. Bank,                         )
                                         )
            Defendant.                   )

**MEMORANDUM OPINION AND ORDER**

Before the court is the defendant U.S. Bank National Association ("U.S. Bank")'s motion to dismiss.  Defendant U.S. Bank Association's Motion to Dismiss ("motion to dismiss") (docket entry 6).  For the reasons set forth below, the motion is **GRANTED** without leave for the plaintiff, Paul Scott ("Scott"), to replead.

I. BACKGROUND

A. Factual Background

This suit arises out of several allegedly retaliatory employment actions taken by U.S. Bank against Scott, including Scott's eventual termination.  Between July 2016 and May 25, 2018, Scott, an African-American male, was employed by U.S. Bank as a Default Management Support Specialist in underwriting.  Plaintiff's Original Complaint and Jury Demand ("Complaint") (docket entry 1) ¶¶ 5, 27.  Scott received exclusively positive reviews of his work until January 2018 and also received

a merit increase that month. *Id.* ¶ 6. Scott was even encouraged to apply for management positions. *Id.* ¶ 7.

Sometime in January 2018, Scott overheard Default Management Support Manager Craig Seward ("Seward"), a white male, tell Scott's own direct supervisor, Damarris Triggs ("Triggs"), that Seward "intended to terminate four (4) African American employees." *Id.* ¶ 9. Scott then "warned the African American employees what he had overheard." *Id.* ¶ 10. One of those employees, Kenetra Bunton ("Bunton") made a complaint to U.S. Bank's human resources department. *Id.* ¶ 11. U.S. Bank's human resources department appears to have to initiated an internal investigation into the incident. Pursuant to a request by Lakisha Carman ("Carman"), a Human Resources Business Partner at U.S. Bank, Scott provided a written statement explaining what he overheard. *Id.* ¶¶ 12-13. Scott also expressed his concern about retaliation for providing the statement, but Carman assured Scott "that he would not face retaliation." *Id.* ¶ 12. Scott alleges that "U.S. Bank convinced Bunton to drop her discrimination complaint." *Id.* ¶ 14.

Scott alleges that "[o]n February 22, 2018, Triggs apologized to Scott when [Triggs'] boss Bennie Wyatt, a white male, ('Wyatt') failed another one of Scott's loans even though the loan should have passed under" U.S. Bank's policy and procedure guide. *Id.* ¶ 15. Scott complained to Triggs that Wyatt purposefully failed his loans in retaliation for providing a statement to human resources. *Id.* The

following day, Scott received verbal couseling for poor performance by Triggs and Wyatt. *Id.* ¶ 16.  Scott "disputes the allegations of poor performance." *Id.* ¶ 17. Sometime in March 2018, "Scott's badge stopped working to access multiple areas of the office." *Id.* ¶ 18.  After Triggs promised to fix Scott's badge, Triggs "eventually told Scott he could not fix it." *Id.*  Scott asserts that his verbal counseling and dysfunctional badge were additional instances of retaliation. *Id.* ¶ 19.  After Scott alerted Carman to these additional instances of alleged retaliation, Carman informed Scott that "she was no longer his HR professional and directed him to HR Business Partner Molly Werner ('Werner')". *Id.* ¶ 20.  Scott described the alleged incidents of retaliation but "Werner was antagonistic and dismissive of Scott's complaints." *Id.* ¶ 21.

During a meeting between Scott, Wyatt, and Triggs on May 24, 2018, Wyatt reprimanded Scott for his allegedly low April production numbers and gave Scott a second verbal warning for poor performance. *Id.* ¶ 23.  After Scott responded that Scott had the highest "score" during the month of May, Wyatt asserted that the "peaks and valleys" of Scott's performance were unacceptable. *Id.*  Scott then turned to Triggs and said "really man this is harassment." *Id.* ¶ 24.  Triggs then "hit the desk with his fist so hard that it could be heard outside of the room" and exclaimed "boy Mr. Paul!" *Id.*  Scott asked Wyatt if Wyatt was "trying to terminate" him. *Id.* ¶ 25.  Wyatt responded "no, but you can give me your resignation, if you want to."

- 3 -

*Id.*  Wyatt then "suggested that Scott take an ad hoc vacation day and go home." *Id.*

Before Scott left, Wyatt told Scott "you can call HR if you want to.  I have her

number for you." *Id.* ¶ 26.  Scott interpreted this as "a veiled threat regarding his

previous" complaints to Carman and Werner.  *Id.*

On May 25, 2018, Wyatt and Triggs met with Scott and fired him.  During

the meeting, Wyatt allegedly told Scott that he was "one good underwriter, but we

have to terminate you because you are a threat to 20 underwriters." *Id.* ¶ 27.  When

Scott asked what Wyatt meant, Wyatt did not provide an explanation.  *Id.*

## B.  Procedural Background

Scott filed his complaint against U.S. Bank on August 8, 2020 under 42

U.S.C. § 1981, arguing that U.S. Bank unlawfully retaliated against him for offering

his statement to U.S. Bank's internal investigation.  On September 25, 2020, U.S.

Bank filed its motion to dismiss arguing (1) that Scott did not engage in activity

protected by § 1981, (2) even if Scott did engaged in protected activity, he did not

suffer a adverse employment action, and (3) even if Scott engaged in protected

activity and suffered an adverse employment action, there was no causal connection

between the two.  Motion to Dismiss at 3-7.  Scott filed his response on October 13,

2020.  *See* Plaintiff's Response to Defendant's 12(b)(6) Motion to Dismiss

("Plaintiff's Response") (docket entry 9).  U.S. Bank replied on October 26, 2020.

*See* Defendant U.S.  Bank National Association's Reply to Plaintiff's Response to its

Motion to Dismiss ("Defendant's Reply") (docket entry 10).  Accordingly, U.S.

Bank's motion to dismiss is ripe for decision.

## II.  ANALYSIS

### A.  Legal Standard

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead

'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina*

*Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic*

*Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182

(2008).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555

(citations, quotation marks, and brackets omitted).  "Factual allegations must be

enough to raise a right to relief above the speculative level, on the assumption that all

the allegations in the complaint are true (even if doubtful in fact)."  *In re Katrina*

*Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation

marks omitted).  "The court accepts all well-pleaded facts as true, viewing them in

the light most favorable to the plaintiff."  *Id.* (quoting *Martin K. Eby Construction*

*Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004))

(internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6).  See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679.  The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief."  *Id.*  The plausibility principle does convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss.  *Id.* at 678.  The plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief.'"  *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)).  The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" his claims against the defendant "across the line from conceivable to plausible."  See *id.* at 679, 683.

## B.  <u>Application</u>

Scott brings this action for redress under 42 U.S.C. § 1981 for U.S. Bank's

alleged retaliation against him.  Complaint ¶¶ 29-36.  The Fifth Circuit has made

clear that "claims of intentional discrimination, which include racial discrimination

and retaliation claims based on Title VII and 42 U.S.C. § 1981" are assessed "under

the same rubric of analysis." *Raggs v. Mississippi Power & Light Company*, 278 F.3d

463, 468 (5th Cir. 2002).[1]  "To present a prima facie case of retaliation under either

Title VII or § 1981, a plaintiff must show that: (1) he engaged in activity protected

by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal

link exists between the protected activity and the adverse employment action." *Davis*

*v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004).

U.S. Bank challenges Scott's complaint on all three grounds.  Because Scott

failed to engage in an activity protected by Title VII, the court declines to consider

the latter two elements of Scott's § 1981 claim.

### 1.  *Protected Activity*

Scott appears to argue that he engaged in two forms of protected activity.

First, Scott asserts that filing a written statement describing Seward's comment with

the internal investigation is protected against retaliation by Title VII.  *See* Plaintiff's

Response at 5-6.  Second, Scott argues that his "complaints" to Triggs, Wyatt, and

U.S. Bank's human resources department about the alleged threat and perpetration

---

[1]     The only substantive differences between Title VII and § 1981 are
procedural and not at issue here.  See *Byers v. Dallas Morning News, Inc.*, 209 F.3d
419, 424 (5th Cir. 2000).

of retaliation by Triggs and Wyatt for Scott's written statement is itself protected

activity under Title VII. See *id.* at 6-8.  Neither of these actions constitute "protected

activity" under Title VII.

Title VII's antiretaliation provision forbids retaliation against an employee

when that employee either (1) "has opposed any practice made an unlawful

employment practice by this subchapter," or (2) "has made a charge, testified,

assisted, or participated in any manner in an investigation, proceeding, or hearing

under this subchapter."  42 U.S.C. § 2000e-3(a); see also *Crawford v. Metropolitan*

*Government of Nashville and Davidson County, Tennessee*, 555 U.S. 271, 274 (2009).

The former is known as the "opposition clause," the latter as the "participation

clause."  As it is unclear from the face of Scott's complaint whether he argues that his

conduct falls under one or both of these categories, the court addresses Scott's

conduct under both rubrics.  The court begins with the narrower participation clause.

a.  Participation Clause

The Fifth Circuit has not directly addressed the precise scope of Title VII's

participation clause.  However, the Fifth Circuit has suggested in dicta  – and several

other circuit courts have held – that participation in an internal investigation does

not amount to protected activity unless, at a minimum, the Equal Employment

Opportunity Commission ("EEOC") has initiated an independent investigation into

the allegedly discriminatory conduct prior to the employee's participation in the

internal investigation. *Equal Employment Opportunity Commission v. Rite Way Service, Inc.*, 819 F.3d 235, 239 n.2 (5th Cir. 2016) ("[E]very Court of Appeals to have considered this issue squarely has held that participation in an internal employer investigation not connected with a formal EEOC proceeding does not qualify as protected activity under the participation clause.") (quoting *Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 49 (2d Cir. 2012)); *Byers*, 209 F.3d at 428 ("In the instant case, the 'participation clause' is irrelevant because Byers's [sic] did not file a charge with the EEOC until *after* the alleged retaliatory discharge took place") (emphasis in original); *Hatmaker v. Memorial Medical Center*, 619 F.3d 741, 746-47 (7th Cir. 2010), *cert. denied*, 582 U.S. 1270 (2011); *Brower v. Runyon*, 178 F.3d 1002, 1006 (8th Cir. 1999) ("At a minimum, there would have to be factual allegations of discrimination against a member of a protected group and the beginning of a proceeding or investigation under Title VII."); *Equal Employment Opportunity Commission v. Total System Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000).[2]

---

[2]     The circuit courts to have considered this issue have apparently come to different conclusions on whether an employee's participation in an internal investigation – rather than participating exclusively in the EEOC's formal investigation – is protected at all.  Compare *Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990) ("Vasconcelos was fired for lying during the Marshal's Service's 1982 Internal Affairs investigation, not for lying in any *EEOC* investigation. . . . Accusations made in the context of charges before the Commission are protected by statute; charges made outside of that context are made at the accuser's peril.") (emphasis in original) with *Total System Services, Inc.*, 221 F.3d at 1174 ("[The participation] clause protects proceedings and activities which occur in conjunction with *or after the filing of* a formal charge with EEOC . . . .") (emphasis added). Fortunately, the court need not resolve this issue in order to rule on Scott's

Contrary to these authorities, however, the EEOC has recently issued guidance providing that the participation clause extends to serving as a witness in an employer's internal complaint irrespective of whether the EEOC initiated a formal investigation.  *See* EEOC Directive No. 915.004, *EEOC Enforcement Guidance on Retaliation and Related Issues* (Aug. 25, 2016) ("EEOC Guidance").[3]  Specifically, the EEOC Guidance provides that "[t]he Commission and the Solicitor General have long taken the view that participation and opposition have some overlap, in that raising complaints, serving as a voluntary or involuntary witness, or otherwise participating in an employer's internal complaint or investigation process, whether before or after an EEOC . . . charge has been filed, is covered under the broad protections of the participation clause . . . ."  *Id.* at Part II.A.1.

Although EEOC compliance manuals reflect "a body of experience and informed judgment to which courts and litigants may properly resort for guidance," such guidance is not binding.  *Federal Express Corporation v. Holowecki*, 552 U.S. 389, 399 (2008) (citations and quotations omitted).  Rather, EEOC guidance is entitled to respect only to the extent that it has the "power to persuade."  *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 110 n.6 (2002).  Given the weight of

_____

participation-clause arguments.

[3]      This guidance is available at https://www.eeoc.gov/laws/guidance/enforcement-guidance-retaliation-and-related-issues.

unanimous and countervailing circuit court authority, the court declines to follow the EEOC's Guidance.  Accordingly, Scott must demonstrate that, at a minimum, the EEOC initiated an investigation into Seward's comment prior to Scott's written statement to U.S. Bank's internal investigation.

Scott has not made such a showing.  As U.S. Bank correctly notes, "[Scott] has not pleaded any facts to illustrate that the internal inquiry to which he claimed to have participated was related in any way to any formal proceeding whatsoever." Motion to Dismiss at 4.  Scott also failed demonstrated that the EEOC initiated an independent investigation into Seward's conduct prior to Scott's own participation in the internal investigation.  Nor does Scott's second category of allegedly protected activity – his own "complaints" to U.S. Bank's Human Resources department, Wyatt, and Triggs – fit within Title VII's participation clause for the same reason. Accordingly, Scott's conduct is not protected under Title VII's participation clause.

b.  Opposition Clause

*i.  Opposition*

Title VII's opposition clause protects a wide range of employee conduct. "'Oppose' goes beyond 'active, consistent' behavior . . ., where we would naturally use the word to speak of someone who has taken no action at all to advance a position beyond disclosing it. . . . And we would call it 'opposition' if an employee took a stand against an employer's discriminatory practices not by 'instigating' action, but

by standing pat, say, by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons." *Crawford*, 555 U.S. at 277.  The opposition clause also extends to statements by employees describing or reporting discrimination, not simply made on the employee's own initiative, but also in response to questions by his employer or solicitations by an internal investigation regarding potential discrimination.  See *Crawford*, 555 U.S. at 277-78 ("There is, then, no reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in [Title VII] requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.").

U.S. Bank therefore goes too far in its argument that Scott "has not pleaded any facts to demonstrate the statement he claims to have submitted to U.S. Bank included a disapproving account of racially-discriminatory behavior."  Defendant's Reply at 2.  Rather, Scott's subjective belief that Seward engaged in wrongful discrimination, in combination with submitting a written statement describing Seward's statement, is sufficient to bring Scott's participation in the internal investigation within the meaning of "opposition."[4]  Additionally, U.S. Bank's narrow

---

[4]     Scott's own disapproval of Seward's alleged discrimination, though not explicitly articulated in the pleadings, can be inferred from Scott's actions after he overheard Seward's comment.  For example, Scott "warned the African American employees what he had overheard" and expressed "concern about retaliation" to U.S.

interpretation of the term "opposition" does not address Scott's several complaints about the alleged threatened and actual retaliation at the hands of Wyatt and Triggs after Scott submitted his written statement.[5] Surely, for example, Scott's protests to the human resources department that "he was experiencing retaliation," Complaint ¶ 19, and his direct confrontations with Wyatt and Triggs satisfy U.S. Bank's demand that Scott express a "disapproving account" of the alleged discrimination.  *Id.* Accordingly, Scott's conduct falls within the meaning of "opposition."

### ii.  *Unlawful Practice*

That Scott "opposed" certain actions by Seward, Wyatt, and Triggs, however, does not end the protected-activity inquiry. "[T]he opposition clause does not require opposition alone; it requires opposition *of a practice made unlawful by Title VII*."  *Rite Way Service, Inc.*, 819 F.3d at 240 (emphasis in original); *see also* 42 U.S.C. § 2000e-3(a) (prohibiting discrimination against an employee "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter").

Bank's Human Resources department.  Complaint ¶¶ 10, 13.  If Scott believed Seward's comments to be entirely inconsequential, one would be left to wonder why Scott felt the need to "warn" his colleagues or risk retaliation by voluntarily submitting his statement to the internal investigation.

[5]      U.S. Bank asserts that Scott's statements to U.S. Bank's human resources department, Triggs, and Wyatt are mere "remarks, messages and inquiries." Defendant's Reply at 3.  It is unclear what the import of this argument is.  After all, "[m]agic words are not required" for an employee to engage in opposition.  *Brown v. United Parcel Service, Inc.*, 406 Fed. App'x 837, 840 (5th Cir. 2010).  As such, irrespective of whether these statements are "complaints," "remarks," "messages," or "inquiries," this conduct amounts to "opposition" within the meaning of Title VII.

- 13 -

Instead, "the opposed conduct must have something to do with Title VII in order to

support a retaliation claim." *Rite Way Service*, 819 F.3d at 242.  Thus, for example,

"an employee who believes she was fired for making statements about accounting

fraud in response to an internal investigation" is not entitled to Title VII protections.

*Id.*  On the other hand, however, an employee need not have a foolproof Title VII

case against his employer for racial discrimination before receiving Title VII

antiretaliation protections if the employee participates in a qualified investigation or

otherwise opposes the employer's allegedly discriminatory conduct.  *Cuellar v.*

*Southwest General Emergency Physicians, P.L.L.C.*, 656 Fed. App'x 707, 710 (5th Cir.

2016) ("[A] viable Title VII *retaliation* claim does not necessarily depend on a viable

*harassment* or *discrimination* claim.") (emphasis in original).

The Fifth Circuit has instead charted a middle ground between these two

poles: an employee "can establish a prima facie case of retaliatory discharge under the

opposition clause . . . if he shows that he had a *reasonable belief* that the employer was

engaged in unlawful employment practices."  *Payne v. McLemore's Wholesale & Retail*

*Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981) (emphasis added), *cert. denied,* 455 U.S.

1000 (1982).  Despite important policy differences and implications, the Fifth

Circuit recently extended this "reasonable belief" standard to "cases involving reactive

opposition by third parties," including those employees that, like Scott, "answer[ed]

questions in response to a company investigation into" allegations of racial

- 14 -

discrimination.  *Rite Way Service, Inc.*, 819 F.3d at 242, 238.  Thus, whether Scott

engaged in opposition protected by Title VII turns on whether he had a "reasonable

belief" that Seward violated or was attempting to violate Title VII's prohibition on

racial discrimination.

### iii.  Reasonable Belief of Racial Discrimination

Title VII prohibits employers from "discharg[ing] any individual . . . because of

such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-

2(a)(1).  A plaintiff can demonstrate impermissible discrimination in an adverse

employment action through direct or circumstantial evidence.  *Laxton v. Gap  Inc.*,

333 F.3d 572, 578 (5th Cir. 2003); § 2000e-2(m) ("[A]n unlawful employment

practice is established when the complaining party demonstrates that race . . . was a

motivating factor for any employment practice, even though other factors also

motivated the practice.").  As there is no direct evidence that Seward acted with

racially discriminatory intent, the burden-shifting framework established in *McDonnell*

*Douglas Corporation v. Green*, 411 U.S. 792, 802-04 (1973), controls.  *Turner v. Baylor*

*Richardson Medical Center*, 476 F.3d 337, 345 (5th Cir. 2007).[6]  Under the *McDonnell*

---

[6]      To constitute "direct evidence" rather than mere "stray remarks," the
Fifth Circuit assesses "whether the comments are (1) related to the plaintiff's
protected characteristic; (2) proximate in time to the challenged employment
decision; (3) made by an individual with authority over the challenged employment
decision; and (4) related to the challenged employment decision."  *Etienne v. Spanish*
*Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 476 (5th Cir. 2015).  Direct
evidence must demonstrate intentional discrimination "without inference or
presumption when believed by the trier of fact."  *Jones v. Overnite Transportation*

*Douglas* burden-shifting scheme, a plaintiff must present a *prima facie* case of discrimination.  "In order to show a *prima facie* case of discriminatory discharge, a plaintiff must first establish that she (1) is a member of a protected class, (2) was subjected to an adverse employment action, (3) was qualified for her position, and (4) was replaced by someone outside of the protected class."  *Id.*[7]

However, "the reasonable belief standard recognizes there is some zone of conduct that falls short of an actual violation but could be reasonably perceived to violate Title VII."  *Rite Way Service, Inc.*, 819 F.3d at 243.  Thus, in the antiretaliation context, the Fifth Circuit considers additional factors, including the context in which the employee opposed his employer's conduct; the context in which

---

*Company*, 212 Fed. App'x. 268, 272 (5th Cir. 2006).  Thus, in *Willis v. Cleo Corporation*, 749 F.3d 314, 318 (5th Cir. 2014), the Fifth Circuit found that the plaintiff's manager's use of "nigger" to describe the plaintiff and an accompanying statement that the manager would terminate the plaintiff "if we have to find a reason" constituted "direct evidence" of racial animus in an adverse employment action.  Nothing in Scott's complaint comes close to mirroring the direct evidence found in *Etienne* or like cases.  A supervisor's mere mention of an employee's protected characteristic in proximity to an adverse employment decision does not amount to direct evidence of the kind required by Title VII.  At best, such comments require an inference of the relationship between the racial remark and the adverse employment decision.

[7]      There is some dispute as to whether a plaintiff must necessarily demonstrate all factors in order to establish a *prima facie* case.  The Fifth Circuit has expressed skepticism, for example, that a plaintiff must always demonstrate the fourth factor.  *Nieto v. L&H Packing Company*, 108 F.3d 621, 624 & n.7 (5th Cir. 1997) (finding that merely because the plaintiff was replaced by someone within the same or another protected class "does not negate the possibility that the discharge was motivated [by] discriminatory reasons" and is "not outcome determinative") (alterations in original) (citations omitted).

the comment was made; and the setting in which the employee voiced his complaint. *Id.* at 242-245.

Taken together, Scott could not have held a "reasonable belief" that Seward engaged or sought to engage in prohibited racial discrimination when Scott provided the written statement to U.S. Bank's internal investigation.  Scott's allegation of Seward's racially discriminatory intent appears to stem from an isolated comment by Seward that Seward "intended to terminate four (4) African American employees." Complaint ¶ 9.  Although "opposition clause claims grounded in isolated comments are not always doomed," *Rite Way Service, Inc.*, 819 F.3d at 243, the Fifth Circuit has consistently rejected single-comment Title VII claims without substantial circumstantial evidence corroborating the plaintiff's allegation of discrimination.  See *Satterwhite v. City of Houston*, 602 Fed. App'x 585, 588 (5th Cir.) (employer's single use of phrase "Heil Hitler" insufficient to protect employee opposition because phrase was "non-extreme," not frequent, and did not unreasonably interfere with employee's work), *cert. denied*, 577 U.S. 821 (2015).

Scott's complaint is devoid of precisely this additional circumstantial evidence which would create an inference that Seward's statement reflected intentional racial discrimination.  Scott alleges no pattern of disparate hiring, firing, or promotions, points to no additional racially charged remarks, and gives no reason to think that Seward's statement was made under suspicious circumstances.  If anything, the

contrary is true: Seward made the statement to Triggs, Scott's own supervisor and a member of the same protected class to which the four employees belonged. Scott has not asserted that Seward has treated these four employees, or others in the protected group, unfairly in the past. Nor did Scott allege that Seward intended to replace the four employees with members of an unprotected class, or that other employees were treated more favorably than the four African-American employees in question. Accordingly, Scott could not have held a reasonable belief that Seward engaged or intended to engage in racial discrimination when Scott provided his statement to the internal investigation and, therefore, did not engage in protected opposition under Title VII.

Scott's second category of conduct – complaining directly to U.S. Bank's human resources department, Wyatt, and Triggs – does not amount to protected opposition for the same reason. As U.S. Banks correctly points out, Scott "has not pleaded any facts to demonstrate his alleged complaints had a *racial* character or otherwise put U.S. Bank on notice that [Scott] was opposing *race-based* harassment, discrimination or other unlawful conduct." Reply at 3-4 (emphasis in original). Of course, U.S. Bank errs in its belief that the complaints must "suggest[] race was the *reason* for the alleged 'harassment,'" *id.* at 4 (emphasis added), because Scott brought a retaliation claim and does not allege that U.S. Bank discriminated against him because of his race. See *Cuellar*, 656 Fed. App'x at 708 ("[A] viable Title VII

*retaliation* claim does not necessarily depend on a viable *harassment* or *discrimination* claim.") (emphasis in original).  Nevertheless, "the opposed conduct must have something to do with Title VII in order to support a retaliation claim." *Rite Way Service*, 819 at 242.  And, as established above, Scott's underlying participation in the internal investigation which allegedly formed the basis for the retaliation against him has, effectively, nothing to do with Title VII because Scott could not have held a reasonable belief that Seward violated the antidiscrimination prohibition.  As such, any subsequent opposition by Scott to Wyatt's and Triggs' "retaliation" for Scott's participation in the internal investigation cannot, by definition, implicate Title VII without an independent allegation of racial discrimination, which Scott does not assert.  This scenario fits squarely within the hypothetical offered by the Fifth Circuit in *Rite Way Service*: "an employee who believes she was fired for making statements about accounting fraud in response to an internal investigation" simply does not come within the purview of Title VII.  *Id.*  As slanted and unjust as Scott may find his termination, Title VII does not protect against "all forms of unscrupulous conduct," *Brown*, 406 Fed. App'x at 840, and was not enacted as a "general civility code for the American workplace."  *Stewart v. Mississippi Transportation Commission*, 586 F.3d 321, 332 (5th Cir. 2009).  Neither Seward's allegedly discriminatory statement nor Wyatt's and Triggs' alleged retaliation can support a reasonable belief that Title VII was violated.  Accordingly, Scott did not engage in protected

opposition to an employment practice made unlawful under Title VII.

Because Scott did not engage in protected activity under Title VII, the court need not assess the latter two elements of Scott's § 1981 antiretaliation claim.

### 2.   *Leave to Amend*

As an alternative to dismissal with prejudice, Scott requests "leave to file an amended complaint to clarify his allegations."  Response at 6.  Federal Rule of Civil Procedure 15(a)(2) provides that the court "should freely give leave when justice so requires."  FED. R. CIV. P. 15(a).  However, "leave to amend is not automatic" and should not be granted "when amendment would be futile."  *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320-21 (5th Cir. 1991).  The complete lack of corroborating circumstantial facts regarding Seward's alleged racial discrimination indicates that neither Scott nor the court would materially benefit from an opportunity for Scott to replead.  Accordingly, Scott's request for leave to amend is denied.

### III.  <u>CONCLUSION</u>

For the reasons stated above, U.S. Bank's motion to dismiss is **GRANTED**.  Scott's request for leave to amend is **DENIED**. Scott's complaint is **DISMISSED** with prejudice.  Judgment will be entered accordingly.

**SO ORDERED**.

December 16, 2020.

_A. Joe Fish_
A. JOE FISH
Senior United States District Judge